UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAYI AFFO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.                                                                   ) | No.  2:11-cv-482-DBH |
| ) | CONSOLIDATED WITH |
| GRANITE BAY CARE, INC. et al.           ) | No. 2:12-cv-115-DBH |
| ) | |
| Defendants.                                         ) | |

**MOTION OF DEFENDANTS GRANITE BAY CARE, INC.,
KASAI MUMPINI, CAROLETTA ALICEA AND GRANITE BAY
CONNECTIONS, INC. FOR PARTIAL SUMMARY JUDGMENT
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**

In accordance with the provisions of Fed. R. Civ. P. 56 and for the reasons set forth herein and based on the pleadings, declarations, depositions, answers to interrogatories and requests for admissions and the Defendants Statement of Undisputed Material Facts ("DSMF"), on file or submitted herewith, Defendants submit that there are no genuine issues of material facts and that they are entitled to judgment as a matter of law on the FLSA claim advanced by the Plaintiffs in this matter.

<u>**INTRODUCTION**</u>

Granite Bay Care, Inc. ("Care") is a New Hamsphire Corporation that operates in Maine and is a for profit business corporation with the purpose "to assist individuals with disabilities to realize their fundamental right to obtain their goals and enhance their quality of life."  Care provides intensive clinical, nursing, residential, and community based services to adults with cognitive and physical disabilities throughout Maine. Granite Bay Care provides residential services for persons with disabilities.  Granite Bay Care attempts to accomplish its mission through engaging persons in various positions,

including Direct Support Professional, Adult Foster Care Provider, Respite Worker, Program Manager, Area Director, and other clinical and administrative staff. The adults that were in the foster care of the Plaintiffs as Adult Foster Care providers suffered from significant mental disabilities. Each Plaintiff who served as an Adult Foster Care Provider was charged with the care, supervision and well being of one or sometimes two consumers at any one point in time.

Plaintiffs Kayi Affo, Andre Teko, Jessica Bradury Palmer, Sharon Fairbanks, and Sharon McCarron served as adult foster care providers for these individuals through contracts that they entered into with Granite Bay Care and also worked as Direct Support Professionals employed by Granite Bay Care. The Plaintiffs claim that they were not only employed by Granite Bay Care, but also that they were employed by Kasai Mumpini, Caroletta Alicea and Granite Bay Connections, Inc. ("Connections"). They claim that their manner of compensation (a stipend for their services as an adult foster care provider and hourly rate of pay for their work as direct support professional/direct service provider) violated the Fair Labor Standards Act.

Defendants submit that Plaintiffs' claims should be barred in accordance with 29 U. S.C. §259 based upon their good faith reliance on the determination of the United States Department of Labor in 2007 on the precise compensation issue raised in this matter.

## STATEMENT OF FACTS

In May, 2007, the United States Department of Labor sent a letter to the attorney for Granite Bay Care, Inc. ("Care") initiating a payroll audit of Care and requesting access to certain documents which were subsequently made available to the DOL. Care

2

made available for review all the files on the direct service providers and the adult foster care providers: both employee payroll files and the contracts for the adult foster care providers.  DSMF ¶¶4-5.

DOL Investigator Matthew Collins conducted the review, asked questions about the contracts, the adult foster care providers as well as about the employees.  He specifically matched up the adult foster care providers to the respite workers and other staff working in specific homes.  Mr. Gregory Robinson, the State Director of Care, did not have to explain the adult foster care provider model to Mr. Collins because his sister used similar services and he was aware of the model.  DSMF ¶¶6-8.

The review of the file continued for a week or so and at the end, Mr. Collins had compiled a list of names and reviewed them with Mr. Robinson.  He specifically asked which of the individuals where adult foster care providers and then he removed them from the list because they were living in their own home and they could choose to have respite workers or not – and therefore the money related to that weekend respite should not be included in the DOL's assessment of back wages.  The adult foster care providers who were removed from the list by Mr. Collins also worked as direct support professionals.  Mr. Collins did not pose any issue around their dual role. In the course of his investigation, Mr. Collins interviewed adult foster care providers, among other individuals.  DSMF ¶¶9-12.

Mr. Robinson met with Mr. Collins on August 30, 2007 and he explained his findings which focused on the respite workers and he clearly said that the adult foster providers were fine which meant that they were legitimate contractors.  On September 17, 2007, Mr. Collins sent an email to Care's attorney which attached a DOL opinion

which dealt with the companionship exemption.  The last paragraph of the email specifies that adult foster care providers who do not use the respite services may have that amount of money considered as an additional foster care stipend.  DSMF ¶¶13-15

The email states in relevant part:  "As I indicated at the meeting, my overtime back wage figures are subject to revision as circumstances warrant, such as for the instances Mr. Robinson mentioned with the adult foster care provider opting not to avail themselves of the respite care and instead being paid the respite care stipend themselves.  In that case, I will instead consider the respite care payment as an additional foster care stipend."  DSMF ¶16.

A meeting subsequently took place with the Department of Labor on November 7, 2007.  George Rioux, the DOL District Director attended along with Mr. Collins and Care's attorney.  The DOL reviewed Mr. Collins previous determinations and Mr. Robinson confirmed Mr. Collins analysis about the adult foster care providers.  Care's attorney asked Mr. Rioux to place in writing for a second time the fact that the adult foster provider model was acceptable.  Mr. Rioux responded that they ordinarily do not that, but if Care sent such a letter, he would respond in writing if there was something in the letter that had to be corrected.  DSMF ¶¶17-18.

A letter of findings subsequently issued and there were no findings with regard to adult foster care providers.  Care's attorney sent a letter to Mr. Rioux which summarized key issues and conclusions from the meeting.  It was in response to his statement that if he had any issues with the content of the letter, he would write a correction back to Care.  The letter set forth Care's position on the adult foster care providers:  "The DOL's

investigation did not focus on the AFCs or hourly workers and found no violations with regard to the AFCs or hourly workers." DSMF ¶¶19-21.

The DOL never responded to the statement in the letter. There were, however, follow up emails from the DOL on the matter seeking unrelated information, but not addressing or correcting the statement in the letter that there had been no violations with regard to the adult foster care providers. Mr. Rioux sent a letter to Care's attorney on February 22, 2008, but it does not mention anything about adult foster providers or contain any correction to the statement contained in the letter from Care's attorney. DSMF ¶¶22-24.

Around the same time as the DOL review, Attorney Fontaine had conversations with Mr. Robinson [in connection with a separate case on which they were on opposite sides] concerning the adult foster care compensation arrangement which led Mr. Robinson to believe that Attorney Fontaine viewed the arrangement as compliant with the law. In addition, around the same time, Mr. Robinson had disclosed the adult foster care compensation arrangement to representatives from the DHHS and they, in turn, had the Attorney General's office review. It was Mr. Robinson's understanding that they also determined that the arrangement was appropriate. DSMF ¶¶25-26.

In 2010, the federal Department of Labor initiated another investigation of Care. Numerous meetings subsequently took place with the Department of Labor. Contrary to the first investigation, the DOL initially concluded that adult foster care providers would be due overtime payments. As a result, Mr. Robinson and Care's attorney met with Mr. Rioux, Mr. Collins and another investigator from the DOL. Mr. Robinson explained that Care had acted in good faith based on the prior review by the DOL in 2007. He said that

5

the DOL had misled Care into believing that the AFC compensation model was viable. DSMF ¶¶27-28.

After reviewing the relevant correspondence, Mr. Rioux agreed that there was reason for Care to have a good faith understanding that it was in compliance with the law. The Department of Labor took no further action against Care after that meeting. DSMF ¶¶29-30.

## ARGUMENT

### Plaintiffs Claims are Barred Based on Defendants' Good Faith Reliance on the Department of Labor's Express Determination on the Adult Foster Care Provider Compensation Arrangement

The federal wage law recognizes that there are some circumstances in which there would be fundamental unfairness to allow a wage violation claim to proceed if the employer was acting in good faith and relying upon some specific action of the United States Department of Labor. The facts of this matter fall squarely within the zone of protection afforded to such employers. In particular, 29 U.S.C. §259 provides as follows:

> (a) in any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

As indicated in the statement of facts set forth above, the Department of Labor conducted an extensive investigation of Granite Bay Care in 2007.  The investigator requested and reviewed documents, contracts and employment records of traditional employees, respite workers and adult foster care providers.  The investigator also interviewed individuals from each of these groups.  In addition to what he was able to ascertain from the documentary review, discussions with management and interviews with individuals, he had personal knowledge of the adult foster care provider arrangement because his sister utilized similar services.  Thus, there can be no doubt that the investigative review was extensive and comprehensive.  At the end of that process, the Department of Labor concluded only that the respite workers had not been compensated in accordance with the law.  Most importantly, however, the Department of Labor affirmatively represented to Care that its adult foster model was compliant with the law.

This latter point is important in two respects.  First, there were several conversations around it with the Department of Labor.  Second, the Department placed this conclusion in an email.  That document specified that an additional payment could be made to an adult foster care provider as an **additional stipend payment**.  The email states:

> As I indicated at the meeting, my overtime back wage figures are subject to revision as circumstances warrant, such as for the instances Mr. Robinson mentioned with **the adult foster care provider opting not to avail themselves of the respite care and instead being paid the respite care stipend themselves.  In that case, I will instead consider the respite care payment as an additional foster care stipend.**  (emphasis added).

It is clear that if there was any issue or concern with payment of adult foster care providers on an hourly basis or with the potential payment of overtime, there would have been no reason for this statement to be made.  However, this statement is even further illuminated by the accompanying conversations between the Department of Labor and Care at that point in time approved this compensation arrangement.

Second, this statement is an express written position set forth by the Department of Labor dealing with a very specific set of facts at Granite Bay Care.  Moreover, this legal determination was reinforced at a subsequent meeting with the District Director for the Department of Labor.  The issue of the legitimacy of the adult foster care provider was specifically brought up, discussed and approved.  Although the Department would not put anything further in writing on the matter, it invited Care to do so and represented that if any of the content of the letter was incorrect, it would respond.

Accordingly, Care wrote to the District Director and said the following:  "The DOL's investigation did not focus on the AFCs or hourly workers **and found no violations with regard to the AFCs or hourly workers.**" (emphasis added).  Although several communications were subsequently received from the Department of Labor, none of them addressed or attempted to correct the statement that no violations were found with regard to the adult foster care providers.  Although the Plaintiffs will likely direct the Court's attention to the language on the focus of the investigation, as indicated above, it is undisputed that the investigation was a comprehensive one that involved the entire company.  Adult foster care providers and their corresponding documentation were an integral part of that review process.

Defendants submit that these facts fit squarely within the umbrella of protection provided by Section 259. There are three elements to the defense under this provision of the law: (1) Care acted in reliance on a ruling or specific enumerated action of the Department of Labor, (2) Care's action was in conformity with that ruling or action, and (3) Care acted in good faith.

There can be no doubt that the second and third elements are satisfied. Indeed, Care continued the adult foster care provider precisely because the Department of Labor had approved it. Importantly, Care changed the respite worker arrangement at the time of the investigation because of the issues associated with the legality of that compensation process and so there was no reason it would not have changed the adult foster care arrangement if it had been informed it was improper. In fact, Care reminded the Department of Labor in 2010 that it had relied on its investigation and statements in continuing the adult foster care provider arrangement during that period of time.

Care's good faith is also supported by the fact that it had conversations with Attorney Donald Fontaine about the adult foster care model in and around the time of the DOL investigation. As a result of those conversations, Mr. Robinson believed that Attorney Fontaine agreed with the legality of that approach.

Care's good faith is also supported by the fact that it openly discussed and disclosed the adult foster care compensation arrangement to the State of Maine and those individuals in turn reviewed the arrangement with the Attorney General's office which approved it. This type of validation supports a determination that Care was operating in good faith.

Thus, the pivotal issue in this analysis is whether the email (together with the discussions and letter) is sufficient enough to constitute "any written administrative regulation, order, ruling, approval, or interpretation".  Defendants submit that this point should be answered in the affirmative.  In  *Mascol v. E&L Transp., Inc.,* 387 F. Supp. 2d 87, 100-101 (E.D.N.Y. 2005), the court was confronted with an analogous situation in which an employer had received a letter from the Department of Labor after an investigation and had relied upon it.  The court recounted these facts as follows:

> In 1996, before the time period covered by this litigation, the Department of Labor ("DOL") investigated Community Transportation, Inc. for violations of the FLSA. In 1996, a letter (the "Sinclair Letter") was issued to Ely Matalon, stating that Community Transportation, Inc., was not in violation of the FLSA and stated "We believe your firm to be exempt from OT [overtime] under *FLSA Reg Section 13(b)(17)* . . . taxicab." The letter was issued from the Employment Standards Administration, Wage and Hour Division, DOL, and signed by Doreen L. Sinclair, an investigator.

*Mascol v. E&L Transp., Inc.,* 387 F. Supp. 2d at 91.

The court ultimately determined that the letter constituted a ruling of the Department.  The Court stated in relevant part:

> Although the Sinclair Letter is not a published letter or opinion of the sort expressly contemplated by the Portal Act, the letter issued to defendants was specific in addressing defendant's particular business, as it was in response to an investigation of defendant's pay practices, and the letter cited legal authority.
> …
> Since the letter was issued by the Wage and Hour Division as a result of a specific official investigation, even though it was not a published formal statement, it qualifies as an official letter representing the position of the Wage and Hour Division and so it must be a "ruling" of an "Agency" as contemplated by the Portal Act.

*Mascol v. E&L Transp., Inc.,* 387 F. Supp. 2d at 100-101.

The same analysis should be applied here – particularly when the email which was sent to Care is coupled with the numerous discussions regarding the compliant nature

10

of the pay practice. The email dealt with the specific compensation issue at Granite Bay Care, contained its determination, was the result of an investigation and as a result it represented an official position of the Department of Labor. It is also important to note that the substantive content of the respective communications in *Mascol* and this case are not much different. Equally relevant is the fact that they were each sent by an investigator. In addition, the letter from Care, which the District Director invited, should further solidify the position that the Department issued a formal ruling in this matter.

While some may argue that an email is not a formal enough method of communication, everyone knows that it has become common place and all individuals use it as a formal, efficient and effective means of communication. Indeed, the e-discovery rules are ample evidence of the importance with which electronic communications are viewed.

The Defendants submit that the facts of this matter are unique, compelling and fall squarely within the protection of Section 259. Accordingly, the Plaintiffs' claims under the FLSA should be barred.

## **CONCLUSION**

For the reasons set forth above, Defendants Granite Bay Care, Kasai Mumpini, Caroletta Alicea and Granite Bay Connections, Inc. submit that they that they are entitled to judgment in their favor as a matter of law on the FLSA claim. In addition, the Defendants submit that in the event that the Court rules in their favor on this issue, it should decline to exercise supplemental jurisdiction on the remaining state claims and dismiss the complaints.

Dated: December 7, 2012           /s/ Timothy J. O'Brien
Timothy J. O'Brien, Esq. (Bar No. 3799)
Attorney for Defendants
Libby O'Brien Kingsley & Champion, LLC
62 Portland Road, Suite 17
Kennebunk, ME 04043
tobrien@lokllc.com
(207) 985-1815

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 7, 2012, I electronically filed the Defendants' Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system which caused a copy of this document to be served electronically on all registered counsel of record:

Donald F. Fontaine, Esq.
97 India Street
PO Box 7590
Portland, ME  04112-7500

Lisa J. Butler, Esq.
Maine Employee Rights Group, PA, LLC
23 Water Street, Ste. 207
Bangor, ME  04401

             /s/ Timothy J. O'Brien
             Timothy J. O'Brien, Esq. (Bar No. 3799)
             Attorney for Defendants
             Libby O'Brien Kingsley & Champion, LLC
             62 Portland Road, Suite 17
             Kennebunk, ME  04043
             tobrien@lokllc.com
             (207) 985-1815