# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

KAYI AFFO, SHARON McCARRON, )
FOLIKOUE ANDRE TEKO, )
SHARON FAIRBANKS AND )
JESSICA PALMER, )
              )
           PLAINTIFFS )    CIVIL NO. 2:11-CV-482-DBH
              )        CONSOLIDATED WITH
v. )    CIVIL NO. 2:12-CV-115-DBH
              )
GRANITE BAY CARE, INC.; KASAI )
MUMPINI AND CAROLETTA )
ALICEA, )
              )
           DEFENDANTS )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a lawsuit about overtime pay under both federal and state law. On May 30, 2013, I issued a summary judgment ruling that resolved certain claims and defenses. Specifically, I granted summary judgment to one of the two corporate defendants on all claims, state and federal. I also granted summary judgment to the two individual defendants on the state law claims only. On the other hand, I granted the plaintiffs summary judgment on liability of the other corporate defendant on the state law claims.

Thereafter, the case proceeded to trial on federal liability of the remaining corporate defendant and the two individual defendants. On November 8, 2013, a jury found that the plaintiffs were employees rather than independent contractors under the Fair Labor Standards Act (FLSA), that they did not perform their work in private homes, and that the two individual defendants

were also their employers. All these findings were favorable to the plaintiffs on federal liability: since the plaintiffs were not independent contractors, the overtime rules applied to them; since their work was not in private homes, the defendants could not claim a statutory exemption for companionship services; and since individual defendants were employers, they too could be liable in addition to the corporate employer.

On November 21, 2013, I conducted a bench trial on certain issues that the parties agreed should not go to the jury. At that time I rejected some of the affirmative defenses. Since then, the parties have also entered into a number of stipulations. I deal now with the remaining factual and legal disputes, except the ultimate calculation of damages and application of the statute of limitations, which are still to be determined.

## GOOD FAITH DEFENSES

There are two good faith defenses under the FLSA that I must address. I treat them separately.

### *Section 259(a)*

29 U.S.C. § 259(a) creates the following "good faith" defense:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938 . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section [*i.e.*, the Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

Id.  Courts have interpreted section 259(a) as creating a three-factor test; it requires "that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency."  Cole v. Fresh Farm Poultry, Inc., 824 F.2d 923, 926 (11th Cir. 1987).

On May 30, 2013, I denied summary judgment to the defendants on their section 259 good faith defense.  Affo v. Granite Bay Care, Inc., 2013 WL 2383627, *13-*15 (D. Me. May 30, 2013).  I followed those courts that have endorsed the Department of Labor's (DOL's) view that an individual investigator does not speak for the agency so as to establish a good faith defense within the meaning of section 259.[1]  See, e.g., Cusumano v. Maquipan Int'l, Inc., 390 F.

---

[1] 29 C.F.R. § 790.19(b):

> where the "agency" whose regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy may be relied on is confined to "the agency of the United States" specified in the section, the Act expressly limits the meaning of the term to the official or officials actually vested with final authority under the statutes involved. . . .  Furthermore, it appears from the statement of the managers on the part of the House accompanying the Conference Committee Report, that the term "agency" as appearing in the Portal[-to-Portal] Act was employed in this sense.  As there stated (p. 16), the regulations, orders, ruling, approvals, interpretations, administrative practices and enforcement policies relied upon and conformed with "must be those of an 'agency' and not of an individual officer or employee of the agency.  Thus, if inspector A tells the employer that the agency interpretation is that the employer is not subject to the (Fair Labor Standards) Act, the employer is not relieved from liability, despite his reliance in good faith on such interpretations, unless it is in fact the interpretation of the agency."  Similarly, the Chairman of the Senate Judiciary Committee, in explaining the conference agreement to the Senate, made the following statement concerning the "good faith" defense.  "It will be noted that the relief from liability must be based on a ruling of a Federal agency, and not a minor official thereof.  I, therefore, feel that the legitimate interest of labor will be adequately protected under such a provision, since the agency will exercise due care in the issuance of any such ruling."

Supp. 2d 1216, 1222 (M.D. Fla. 2005) ("[Section 259] requires reliance upon a written administrative interpretation from the Administrator of the Wage and Hour Division of the Department of Labor, but Defendants' Exhibit B was sent by a Wage and Hour Investigator, not the Administrator. Further, this sort of correspondence does not constitute a written administrative interpretation." (citing district court cases from Colorado, Wisconsin, and Pennsylvania)). I explained in the summary judgment ruling why I did not find persuasive Mascol v. E & L Transp., Inc., 387 F. Supp. 2d 87, 100-01 (E.D.N.Y. 2005), which reached a seemingly contrary conclusion.

At trial the defendants renewed their good faith defense under section 259. When the plaintiffs objected, the defendants made a written proffer of the evidence they would present on the issue. Defs.' Evidentiary Proffer on the Good Faith Reliance Defense Pursuant to 29 U.S.C. § 259 (ECF No. 191). Specifically, they offered (1) the testimony of the company's State Director Robinson that the 2007 DOL investigation was comprehensive and extensive and included Adult Foster Care Providers, and that the investigator stated that he was familiar with the Adult Foster Care Provider payment model because a family member received similar services; (2) Robinson's testimony about what DOL told him orally in connection with the 2007 investigation, the contents of the email discussed in the summary judgment ruling, and the contents of the investigative summary proffered as Plaintiffs' Exhibit 84; (3) Robinson's testimony about the things that were said at the ensuing meeting with the DOL Regional Director; (4) the company's lawyer's subsequent letter to the Regional Director and the lack of response to the lawyer's assertion that DOL had found

no violations with respect to Adult Foster Care Providers; and (5) Robinson's testimony about the company's reliance on that history and on DOL's stepping back from an enforcement action in 2010 when the company reminded DOL of the 2007 statements.  Defs.' Evidentiary Proffer on the Good Faith Reliance Defense Pursuant to 29 U.S.C. § 259 at 2, 7-8.  None of this additional evidence would make the section 259 good faith defense available to the defendants.  Even if all these facts are established, the defendants still have no "written administrative regulation, order, ruling, approval, or interpretation" that satisfies the standard.  Without that writing, the defendants do not qualify for the good faith defense to federal liability.

### *Section 260*

Section 260 also provides a good faith defense, but only as to liquidated (double) damages under section 216(b)), and it is worded differently:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title [*i.e.*, not to exceed double damages].

29 U.S.C. § 260.  The First Circuit has held that under section 260 an employer must "'show[ ] to the satisfaction of the court' that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA," Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007) (quoting

section 260), and it is the employer's burden to make the showing.  <u>Id</u>. at 36.[2]

The parties presented evidence to me on this section 260 good faith issue at the

November 21 bench trial and filed post-trial briefs.  The following are my

findings of fact and conclusions of law on the section 260 good faith defense to

liquidated damages.

**FINDINGS OF FACT**

1.    Gregory Robinson, Granite Bay Care's Director for the State of

Maine, devised the Adult Foster Care Provider staffing model for Maine to

provide a continuity of care that he believed best supported mentally disabled

individuals in need of services.  Under that model, Adult Foster Care Providers

lived in and managed a home in which the client(s) lived.  Respite Care Workers

were hired to allow Adult Foster Care Providers time off on weekends.  Both

Adult Foster Care Providers and Respite Care Workers were treated as

independent contractors and compensated by a stipend, not on an hourly

basis.

2.    Knowing that a type of Adult Foster Care Provider model had been

used by Granite Bay Connections, Inc. in New Hampshire, in 2004 the Maine

Department of Health and Human services invited Robinson to present a model

of support that could be used for the most challenging Maine consumers.  The

Maine model involved the use of both an Adult Foster Care Provider and a

---

[2] Some circuits seem to have a different standard of proof than the standard preponderance of
the evidence, <u>see</u> <u>Brooks v. Village of Ridgefield Park</u>, 185 F.3d 130, 137 (3d Cir. 1999); <u>Reich
v. Southern New England Telecomm. Corp.</u>, 121 F.3d 58, 71 (2d Cir. 1997) ("[plain and
substantial evidence"), but the First Circuit has not used any special standard.  <u>See, e.g.</u>, <u>Chao
v. Hotel Oasis, Inc.</u>, 493 F.3d at 35.  The statute says only "to the satisfaction of the court."  29
U.S.C. § 260.

"Direct Service Provider" or "Direct Support Professional," also called DSP. The Adult Foster Care Provider contracts required that the Adult Foster Care Providers be responsible for the care of the disabled client twenty-four hours per day, five days per week between Sunday at 4:00 p.m. and Friday at 4:00 p.m. The DSPs, on the other hand, worked with the client Mondays to Fridays, 8 a.m. to 4 p.m., taking them to various appointments or educational or work sites, and were paid by the hour. "Respite Care Workers" covered the period of time between Friday at 4:00 p.m. and Sunday at 4:00 p.m. unless the Adult Foster Care Provider decided to remain in the home with the client over the weekend. Granite Bay Care did not require Adult Foster Care Providers to work as Direct Support Professionals, but gave them the option to do so, and several did.

3.     The Maine Department of Health and Human Services was familiar with the Adult Foster Care Provider model and discussed it with the Maine Attorney General's office both in 2004 and in 2008, but never expressed to Granite Bay Care any concern that the payment model might violate federal wage laws.

4.     In 2006, Robinson decided to stop treating Respite Care Workers as independent contractors and on January 1, 2007, began paying them on an hourly basis.

5.     Later in 2007, the United States Department of Labor initiated a payroll audit of Granite Bay Care going back two years. An investigator was onsite in a conference room at Granite Bay Care in Maine for one week with access to all payroll documents and to State Director Robinson. The

investigation's focus was the treatment of Respite Care Workers before Granite Bay Care had changed them to hourly workers.

6. The investigator told Robinson that he was familiar with the Adult Foster Care Provider model because a family member received adult foster care services.

7. The investigator was made aware that certain Granite Bay Care personnel worked as both an Adult Foster Care Provider and a DSP.

8. On September 17, 2007, the Investigator sent Granite Bay Care's attorney an email concluding that Granite Bay Care could not take advantage of the companionship "private home" exemption for the respite care services, and that some of those workers therefore should have been treated as hourly workers before the change and were entitled to overtime for the period before Granite Bay Care began paying them on an hourly basis. Pls.' Ex. 81 at 2315.

9. After concluding that "respite care hours must be combined with any other hours of work done . . . by the respite provider for FLSA overtime purposes," the same e-mail stated:

> As I indicated at the meeting, my overtime back wage figures are subject to revision as circumstances warrant, such as for the instances [the Granite Bay Care representative] mentioned with the adult foster care provider opting not to avail themselves of the respite care and instead being paid the respite care stipend themselves. In that case, I will instead consider the respite care payment as an additional foster care stipend.

Pls.' Ex. 81 at 2315-2316. In other words, if the Adult Foster Care Provider stayed in the house on the weekend without a Respite Care Worker, thus receiving two stipends, the investigator was not concerned about hourly rates

and overtime for the Adult Foster Care Provider and would remove that from overtime back wage calculations. Robinson interpreted the investigator's statement in this email to mean that Adult Foster Care Providers were not subject to overtime requirements and that unlike respite workers they could work extra hours.

10. The DOL investigation concluded in the fall of 2007. DOL told Granite Bay Care that it had to treat Respite Care Workers as employees and pay them overtime rather than a stipend because they did not satisfy the exemption for work done in "private homes."

11. At a meeting, representatives of Granite Bay Care asked DOL's District Director if he would confirm in writing the "legal viability" of the Adult Foster Care Provider model. The District Director for the DOL told Granite Bay Care that DOL did not make a practice of giving an advance ruling, but that Granite Bay Care was free to memorialize the meeting in a letter and, if he had any issues or corrections, he would respond to the letter.

12. As a result, Granite Bay Care's lawyer wrote a letter to the DOL District Director on December 12, 2007. It stated in part: "The DOL's investigation did not focus on the AFCs or hourly workers and found no violations with regard to AFCs or hourly workers." Pls.' Ex. 81 at 2325.

13. Granite Bay Care did not receive a response to this letter from DOL's District Director.

14. In 2010, DOL started a new investigation of Granite Bay Care, taking the position that Adult Foster Care Providers were hourly employees subject to overtime requirements. At a meeting, Granite Bay Care's Robinson

challenged the District Director and the 2007 Investigator, saying that DOL's position was inconsistent with what they had told Granite Bay Care in 2007. In response, they both confirmed that in 2007 they had treated Adult Foster Care Providers as presenting no overtime issues. The outcome was that Granite Bay Care agreed to treat the Adult Foster Care Providers as hourly workers going forward, DOL did not seek back pay for them as it had for Respite Care Workers in 2007, and the parties agreed on a letter tolling the statute of limitations that operates to the private plaintiffs' benefit here.[3]

## CONCLUSIONS OF LAW FOR BENCH TRIAL

I conclude that the defendants satisfy both the subjective good faith requirement and the objective "reasonable grounds" requirement of section 260. The September 17, 2007, email from the investigator can only be interpreted as meaning that he was not treating Adult Foster Care Providers as hourly workers and did not consider them subject to overtime requirements. I do agree with the plaintiffs that Granite Bay Care could no longer safely assume that the companionship/private home exemption applied to them, in light of DOL's rejection of that exemption for Respite Care Workers based upon the nature of the housing. But that conclusion has nothing to do with whether Granite Bay Care could continue to believe in good faith that the Adult Foster

---

[3] There was also testimony about claims asserted in another lawsuit, referred to as the <u>Akilimali</u> case, filed in 2007 against Granite Bay Care for recovery of overtime payments in state court. There was dispute over whether the plaintiffs in that case were seeking overtime compensation for their time as Adult Foster Care Providers or as Respite Care Workers. The <u>Akilimali</u> case was ultimately settled. I conclude that its existence and settlement do not shed light on whether the defendants have a good faith defense here. Lawsuits' merits vary, I do not know whether the settlement amount in <u>Akilimali</u> was significant or token, and I do not know whether the case was settled on the basis of a state law claim or the federal claim.

Care Providers were independent contractors rather than employees, and therefore not subject to overtime. In addition to the September 17, 2007, email, DOL's Regional Director and the Investigator confirmed at the 2007 meeting with Granite Bay Care's State Director and lawyer that, apart from the Respite Care Workers, Granite Bay Care's payment model satisfied DOL requirements. That interpretation of DOL's position in 2007 is confirmed by what DOL said and did in 2010 when reminded of the 2007 investigation.[4]

I conclude therefore that the State Director acted in good faith in continuing to treat Adult Foster Care Providers as independent contractors not subject to overtime requirements. I also conclude that the interactions with the Department of Labor investigator and District Director furnished reasonable grounds for him to do so. As a result, the corporate defendant qualifies for the defense.[5] The two individuals depended entirely on what the State Director told them. Therefore, they too satisfy good faith and reasonableness grounds.

As a result, I conclude that the defendants have satisfied section 260 and I exercise my discretion under that section not to impose liquidated (double) damages. See Miller v. Kansas Power & Light Co., 585 F. Supp. 1509, 1515 (D. Kan. 1984) (under identical language of Equal Pay Act, rejecting liquidated

---

[4] Unlike section 259, section 260 does not require something that qualifies as a written administrative regulation, order, ruling, approval, or interpretation.

[5] I do not rely on the testimony that the Maine Department of Health and Human Services and the Maine Attorney General's office did not find a violation. They have no role in enforcing the FLSA. I also do not find that Granite Bay Care's lawyer's unanswered letter to the DOL Regional Director adds anything. She said that DOL had not focused on Adult Foster Care Providers and did not find any violations. There was nothing in that statement with which to disagree.

damages where "there was evidence that a Department of Labor investigation in 1978 revealed no equal pay violation with respect to plaintiff and that defendant, in good faith, relied upon the determination").

## MOTION FOR JUDGMENT AS A MATTER OF LAW

Finally, the defendants have moved for judgment as a matter of law on the matters submitted to the jury. The motion is **DENIED**. On the evidence presented at the jury trial, the jury reasonably could rule in the plaintiffs' favor that the individual defendants were employers, that the plaintiffs were not independent contractors, and that they did not perform their services in private homes.

In summary, Granite Bay Care, Inc., Kasai Mumpini and Caroletta Alicea are liable on the federal overtime claims, but not for liquidated (double) damages. Granite Bay Care, Inc. is also liable on the state law claims. What remain to be decided are: (1) interpretation of the tolling agreement regarding the statute of limitations; (2) the calculation of backpay for overtime during the relevant period.

**SO ORDERED.**

**DATED THIS 22ND DAY OF JANUARY, 2014**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**